## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

COPE (a.k.a. CITIZENS FOR
OBJECTIVE PUBLIC EDUCATION,
INC.), ET AL.,

       **Plaintiffs,**

v.

KANSAS STATE BOARD OF
EDUCATION, ET AL.,

       **Defendants.**

Case No. 13-4119-DDC-JPO

## MEMORANDUM AND ORDER

Plaintiffs bring this declaratory judgment action seeking to enjoin the Kansas State

Department of Education and the Kansas State Board of Education from implementing new

science standards for Kansas schools.  Plaintiffs[1] consist of students, parents, Kansas resident

taxpayers, and a nonprofit organization.  They have sued the Kansas Commissioner of

Education,[2] the Kansas State Department of Education, the Kansas State Board of Education, and

its individual members.[3]

This matter is before the Court on defendants' Motion to Dismiss (Doc. 29) and

plaintiffs' Motion for Leave to file a Surreply (Doc. 42).  After considering the arguments of the

---

[1]      Citizens for Objective Public Education, Inc. ("COPE"), Carl Reimer, Mary Angela Reimer, B.R., H.R., B.R., N.R., Sandra Nelson, J .N., Lee Morss, Toni Morss, L.M., R.M., A.M., Mark Redden, Angela Redden, M.R., Burke Pelton, Kelcee Pelton, B.P., L. P., K.P., Michael Leiby, Bre Ann Leiby, E. L., P. L., Z. L., Jason Pelton, Robin Pelton, C.P., S.P., S.P., C.P., Carl Walston, Marisel Walston, H.W., David Prather, and Victoria Prather.

[2]      Diane DeBaker.

[3]      Janet Waugh, Steve Roberts, John W. Bacon, Carolyn L. Wims–Campbell, Sally Cauble, Deena Horst, Kenneth Willard, Kathy Busch, Jana Shaver, and Jim McNiece.

parties, the Court grants defendants' Motion to Dismiss (Doc. 29) and denies plaintiffs' Motion

for Leave to File a Surreply (Doc. 42).

### I.      Background

The following facts are taken from plaintiffs' Complaint (Doc. 1) and viewed in the light

most favorable to them.  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as

true all well-pleaded factual allegations in the complaint and view them in the light most

favorable to the [plaintiffs]." (citation and internal quotation marks omitted)).  On June 11, 2013,

the Kansas State Board of Education adopted the Next Generation Science Standards ("the

Standards")[4] and the related *Framework for K-12 Science Education:  Practices, Crosscutting

Concepts and Core Ideas* ("the Framework").[5]  Plaintiffs allege that the Kansas State Board of

Education's adoption of the Framework and Standards will cause Kansas public schools to

establish and endorse a non-theistic religious worldview in violation of the Establishment, Free

Exercise, and Speech Clauses of the First Amendment and the Equal Protection Clause of the

Fourteenth Amendment.

More specifically, plaintiffs allege that the Framework and Standards take impressionable

children, beginning in kindergarten, into the religious sphere by leading them to ask ultimate

religious questions such as "what is the cause and nature of life and the universe—'where do we

come from?'"  Pls.' Compl. (Doc. 1) at ¶ 2.  Plaintiffs assert that the Standards fail to inform

---

[4]      Plaintiffs incorporate the Standards into their Complaint by reference and state that the Standards
are available at http://www.nextgenscience.org/.  Pls.' Compl. (Doc. 1) at ¶ 1.  Defendants have submitted
the Standards as an exhibit to their Memorandum in Support of their Motion to Dismiss (Doc. 30, Ex. B)
(hereinafter, "Standards").

[5]      Plaintiffs incorporate the Framework into their Complaint by reference and state that the
Framework is available at http://nap.edu/catalog.php?record_id=13165#.  Pls.' Compl. (Doc. 1) at ¶ 1.
Defendants have submitted the Framework as an exhibit to their Memorandum in Support of their Motion
to Dismiss (Doc. 30, Ex. A) (hereinafter, "Framework").

children objectively about the actual state of our scientific knowledge on these questions in an age appropriate and religiously neutral manner.  Instead, plaintiffs claim the Standards use an "Orthodoxy," called methodological naturalism or scientific materialism, which requires that explanations of the cause and nature of natural phenomena only use natural, material, or mechanistic causes, and must assume that supernatural and teleological or intelligent design conceptions of nature are invalid.  Plaintiffs contend that the Standards do not adequately disclose this "Orthodoxy" and use other deceptive methods to lead impressionable children to answer questions about the cause of life with only materialistic or atheistic answers.  Plaintiffs characterize this "Orthodoxy" as "an atheistic faith-based doctrine."  *Id.* (Doc. 1) at ¶ 9. Plaintiffs argue that the purpose of teaching this Orthodoxy is to indoctrinate children by establishing a non-theistic religious worldview rather than delivering an objective and religiously neutral origins science education.

Plaintiffs seek to enjoin the implementation of the Framework and Standards and ask the Court to enter a declaratory judgment finding that the Framework and Standards violate:  (1) the Establishment Clause of the First Amendment; (2) the Free Exercise Clause of the First Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; and (4) the Speech Clause of the First Amendment.  Plaintiffs also seek relief in the alternative, requesting an injunction prohibiting defendants from implementing the portions of the Framework and Standards that seek to teach about the origin, nature, and development of the cosmos and life on earth ("origins science") for children in kindergarten through grade 8 entirely and for grades 9 through 12 unless the origins science instruction also includes additional information such as: "an evidence-based teleological alternative competes with the materialistic explanations

provided by the Orthodoxy, which is an inference to an intelligent rather than a material cause [of origins events]."  Pls.' Compl. (Doc. 1) at p. 32 ("Prayer for Relief" ¶ c.2.g).

## II.    Plaintiffs' Motion for Leave to File a Surreply

As an initial matter, the Court must decide whether it may consider plaintiffs' proposed surreply (Doc. 43-1) as part of the briefing on defendants' motion to dismiss.  Defendants filed their Motion to Dismiss (Doc. 29) and Memorandum in Support of that Motion (Doc. 30).  In response, plaintiffs filed a Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 40), and defendants filed a Reply (Doc. 41).  Afterwards, plaintiffs filed a Motion for Leave to File a Surreply under D. Kan. Rule 15.1(a) (Doc. 42).  Defendants filed a Response in opposition to plaintiffs' request to file a surreply (Doc. 44), and plaintiffs filed a Reply (Doc. 46).

Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply.   Surreplies typically are not allowed.  *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 Fed. App'x 752 (10th Cir. 2006).  Rather, surreplies are permitted only with leave of court and under "rare circumstances."  *Humphries v. Williams Natural Gas Co.*, No. 96–4196–SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted).  For example, when a moving party raises new material for the first time in a reply, the court should give the nonmoving party an opportunity to respond to that new material (which includes both new evidence and new legal arguments) in a surreply.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).  The rules governing the filing of surreplies "are not only fair and reasonable, but they assist the court in defining when briefed matters are finally submitted and in minimizing the

battles over which side should have the last word." *Humphries*, 1998 WL 982903, at *1 (citation and internal quotation marks omitted).

Here, plaintiffs argue that they should be permitted to file a surreply to address: (1) defendants' citation to the minutes of a June 11, 2013 Kansas Board of Education meeting, a video streamed online of a June 11, 2012 Kansas Board of Education meeting, and a Report and Recommendation of the Next Generation Science Standards Review Committee ("Report and Recommendation") because plaintiffs claim they do not have access to these materials "due to a moratorium on discovery" and therefore they are unable to check them for accuracy and completeness; (2) "important errors" in defendants' arguments; and (3) a "new argument" that plaintiffs have changed their theory of injury from the theory asserted in the Complaint.

Defendants oppose plaintiffs' motion for leave to file a surreply, arguing that their citation to the minutes and video and their argument about plaintiffs changing their theory of injury are not "new" arguments but instead respond to arguments made by plaintiffs in their Memorandum in Opposition. Defendants also point out that plaintiffs devote only about 11 lines of their 23-page surreply to the minutes and video and only one sentence to defendants' argument that plaintiffs have changed their theory of injury.

The Court agrees that plaintiffs' proposed surreply does not respond to "new material." Rather, the majority of plaintiffs' proposed surreply addresses what plaintiffs claim are "important errors" in defendants' arguments. But in so doing plaintiffs have rehashed arguments that they made or could have made in their Memorandum in Opposition, including their responses to defendants' arguments that plaintiffs have mischaracterized the Framework and

Standards,[6] that plaintiffs' alternative prayer for relief would violate the Establishment Clause,[7] and that the Kansas opt out statute provides an opportunity for students to opt out of activities that offend their religious beliefs and therefore defeats a Free Exercise claim.[8] This is precisely why our Court typically does not allow surreplies. *See Hall v. Whitacre*, No. 06–1240–JTM, 2007 WL 1585960, at *1 (D. Kan. May 31, 2007) (finding "utterly no justification for the surreply" that "essentially provides additional and longer arguments, which also could have been submitted in the first response"); *see also E.E.O.C. v. Int'l Paper Co.*, No. 91–2017–L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992) (refusing to consider a surreply because the parties' briefing "must have an end point and cannot be allowed to become self-perpetuating").

Defendants' reference to the minutes, video, and Report and Recommendation in their Reply is also not "new material."  First, the minutes and video of Kansas State Board of Education meetings were cited in defendants' Reply to rebut plaintiffs' argument that the Kansas State Board of Education acted with the purpose of advancing or inhibiting religion when it adopted the Framework and Standards (Doc. 41 at 14).  Thus, it is not "new material" but rather part of a response to an existing argument made by plaintiffs.  Defendants also provided hyperlinks for the minutes and video directing the reader to internet websites where the minutes and video are located online.  Thus, plaintiffs did have access to these materials.  Second, defendants cited the Report and Recommendation in their Memorandum in Support of the

---

[6]     Defendants made this argument in their Memorandum in Support of the Motion to Dismiss (Doc. 30 at 8–13).  Plaintiffs could have responded to this argument in their Memorandum in Opposition. Plaintiffs instead respond to this argument in the proposed surreply (Doc. 43-1 at 4–12).

[7]     Defendants made this argument in their Memorandum in Support of the Motion to Dismiss (Doc. 30 at 35).  Plaintiffs could have responded to this argument in their Memorandum in Opposition. Plaintiffs instead respond to this argument in the proposed surreply (Doc. 43-1 at 15).

[8]     Defendants made this argument in their Memorandum in Support of the Motion to Dismiss (Doc. 30 at 36).  Plaintiffs admit in their surreply that they already responded to this argument in their Opposition (Doc. 43-1 at 18 (citing Doc. 40 at 6, 15, 39–40)).

Motion to Dismiss (Doc. 30 at 32–33) and provided a hyperlink in the Reply that directed the reader to the document on the internet. Plaintiffs argued in their Memorandum in Opposition, as they also do in the proposed surreply, that they have never seen this document "because of the moratorium on discovery" (Doc. 40 at 30). Defendants explained in their Reply that the Report and Recommendation is a public document and that they had provided an internet link to that document in their Memorandum in Support (Doc. 41 at 14). By the time defendants filed their Reply, the internet link they had cited previously was broken, and they provided a new internet address where the Report and Recommendation now is located online and explained that the Report and Recommendation is available on the Kansas Next Generation Science Standards homepage and accessible through a Google search (Doc. 41 at 14 n.5). Plaintiffs therefore did have access to the Report and Recommendation.

In addition, defendants' argument about plaintiffs changing their theory of injury is not "new material." Plaintiffs argued in their Memorandum in Opposition that defendants misconceived the nature of the injury alleged in the Complaint and explained that plaintiffs' injury arises from a "message of endorsement" (Doc. 40 at 8). Defendants responded to that argument in their Reply by asserting that plaintiffs had changed their theory of injury in the Memorandum in Opposition from what was alleged in the Complaint (Doc. 41 at 7). This is not new argument but instead responds to an argument made by plaintiffs in their Memorandum in Opposition. Plaintiffs contend that they have not had an opportunity to oppose defendants' argument on this point (Doc. 43 at 3–4), but allowing plaintiffs to file a surreply in response to an argument that is not "new" contradicts our rules governing briefing on motions. *See* D. Kan. Rule 7.1(c) (limiting briefing on motions to the motion (with memorandum in support), a response, and a reply); *see also Humphries*, 1998 WL 982903, at *1 (the rules "assist the court in

defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word." (citation and internal quotation marks omitted)).

For these reasons, the Court denies plaintiffs' Motion for Leave to File a Surreply. Although the Court will not consider plaintiffs' proposed surreply in the motion to dismiss analysis below, the Court nevertheless has reviewed plaintiffs' proposed surreply and has determined that its arguments do not alter the outcome of defendants' motion. The Court would reach the same result on defendants' Motion to Dismiss regardless of its consideration of the arguments in plaintiffs' proposed surreply.

### III.    Motion to Dismiss Standard

Defendants move for dismissal of this lawsuit under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[9] "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) takes one of two forms:  a facial attack or a factual attack. *Holt v. United States*,

---

[9]    Defendants also move for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Because the Court determines below that it lacks subject matter jurisdiction over plaintiffs' claims, it does not reach defendants' arguments for dismissal under Fed. R. Civ. P. 12(b)(6).

46 F.3d 1000, 1002–03 (10th Cir. 1995).  "First, a facial attack on the complaint's allegations [of] subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Id.* at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.* at 1003 (internal citations omitted); *Los Alamos Study Group v. United States Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012).  *See also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court must convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question intertwines with the merits of the case).

## IV.    Analysis

Defendants seek dismissal of plaintiffs' Complaint in its entirety for four reasons: (1) the Kansas State Board of Education and the Kansas State Department of Education are entitled to Eleventh Amendment sovereign immunity; (2) plaintiffs lack Article III standing; (3) plaintiffs have failed to state a claim under the Establishment Clause of the First Amendment; and (4) plaintiffs have not stated a claim under either the Free Exercise or Free Speech Clauses of the First Amendment or the Equal Protection Clause of the Fourteenth Amendment.  Because the Court grants defendants' motion for the first two reasons, it does not reach defendants'

arguments that plaintiffs have failed to state a claim.  The Court therefore addresses only defendants' sovereign immunity and standing arguments below.

### A.  Eleventh Amendment Sovereign Immunity

Defendants assert that the Eleventh Amendment bars plaintiffs' claims against the Kansas State Board of Education and the Kansas State Department of Education because they have sovereign immunity under the Eleventh Amendment.  The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  Eleventh Amendment immunity applies not only to states but also extends to state entities that are considered "arm[s] of the state."  *Steadfast Ins. Co.*, 507 F.3d at 1253 (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

In response to defendants' sovereign immunity argument, plaintiffs do not contest that the Kansas State Board of Education and the Kansas State Department of Education, as state agencies, are immune from suit (Doc. 40 at 7).  The Court thus concludes that the agencies, as state entities, are immune from suit under the Eleventh Amendment and dismisses the Kansas

State Board of Education and the Kansas State Department of Education from this suit based on Eleventh Amendment sovereign immunity.

### B.  Standing

Defendants assert that each plaintiff in this lawsuit lacks standing, and therefore the Court must dismiss the case.  Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies."  *Clapper v. Amnesty Int'l USA*, ___ U.S. ___, 133 S. Ct. 1138, 1146 (2013).   To present a case or controversy under Article III, a plaintiff must establish that he has standing to sue.  *Id.* (citations omitted); *see also Ariz. Christian Sch. Tuition Org. v. Winn*, ___ U.S. ___, 131 S. Ct. 1436, 1442 (2011) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Article III standing requires a plaintiff to establish (1) that he or she has "suffered an 'injury in fact'"; (2) that the injury is "'fairly . . . trace[able] to the challenged action of the defendant'"; and, (3) that it is "'likely'" that "the injury will be 'redressed by a favorable decision.'"  *Ariz. Christian Sch. Tuition Org.*, ___ U.S. at ___, 131 S. Ct. at 1442 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012).  "At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination."  *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (citation and internal quotation marks omitted).

First, defendants argue that all plaintiffs lack standing because they have failed to allege an injury that is sufficiently concrete and particularized, actual or imminent, and not conjectural or hypothetical; fairly traceable to the adoption by the Kansas State Board of Education ("the Board") of the Framework and Standards; or redressable by a favorable decision by this Court.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Second, defendants assert that plaintiffs David and Victoria Prather, who allege standing because they are Kansas taxpayers, lack standing for an additional reason—their claims fail to satisfy one of the exceptions to the general prohibition against taxpayer standing.  The Court addresses defendants' standing arguments separately, below.

The Court first addresses whether plaintiffs have alleged an injury sufficient to support their claims (the first requirement of *Lujan*).  Next, the Court discusses whether plaintiffs have satisfied the second and third requirements of *Lujan* by alleging causation and redressability.  Finally, the Court examines whether plaintiffs David and Victoria Prather have standing based on their status as Kansas taxpayers.

## 1.  Injury Requirement

Plaintiffs bring four claims in this lawsuit.  Each one of the four claims has different standing requirements.  The first section below (part a) discusses whether plaintiffs have alleged an injury sufficient to support an Establishment Clause claim.  The next section (part b) considers whether plaintiffs have alleged an injury sufficient to support their remaining claims.

### a.  Establishment Clause Injury

Defendants argue plaintiffs have alleged no injury caused by the Board's adoption of the Framework and Standards because they have no binding effect on local public schools.  To put this argument in context, it is imperative to understand the role that the Board plays—and does not play—as a matter of Kansas law.

The Kansas Constitution limits the Board's authority over local public schools to "general supervision" and reserves the actual operation of local public schools to locally elected school boards:  "Local public schools under the general supervision of the state board of

education shall be maintained, developed and operated *by locally elected boards*."  Kan. Const. art. 6, §§ 2, 5 (emphasis added).  Kansas law requires the Board to establish "curriculum standards" for local public schools, but also prohibits the Board from "imping[ing] upon any district's authority to determine its own curriculum."  K.S.A. § 72-6439(b);[10] *see also State ex rel. Miller v. Bd. of Educ. of Unified Sch. Dist. No. 398*, 511 P.2d 705, 713 (Kan. 1973) (explaining that "supervision" by the Board "means something more than to advise but something less than to control").  Thus, defendants argue the Framework and Standards, as adopted by the Board, do not bind local public schools.

Plaintiffs have not alleged when or how Kansas schools will implement the Framework or Standards, and therefore, defendants argue plaintiffs' alleged injury is speculative.  Plaintiffs respond, contending that their Establishment Clause injury arises from a "message of endorsement" signaled by the Board's adoption of the Framework and Standards because, by doing so, the Board endorsed "a non-theistic religious Worldview" (Doc. 40 at 8).  In their Reply, defendants assert that plaintiffs' Complaint alleges an injury caused by the implementation of the Framework and Standards and, by arguing that their injury is caused by a "message of endorsement," plaintiffs have changed their theory of injury to one not alleged in the Complaint.

---

[10]      In *Montoy v. State*, 120 P.3d 306 (Kan. 2005), the Kansas Supreme Court held that the Kansas School District Finance Quality Performance Act (SDFQPA), K.S.A. §§ 72-6405 *et seq.*, was unconstitutional because the school funding formula in that Act failed to satisfy the legislature's constitutional obligation to make suitable provision for finance of public schools. *Id.* at 308–10.  (K.S.A. § 72-6439 is contained in the SDFQPA.)  In 2006, the Kansas Legislature increased funding for K-12 education, and in response, the Kansas Supreme Court held that the newly legislated school finance formula complied with the court's previous orders. *Montoy v. State*, 138 P.3d 755, 763 (Kan. 2006), *cert. denied*, 549 U.S. 1078 (2006).  Thus, while the Kansas Supreme Court previously held K.S.A. § 72-6439 unconstitutional because it was part of the deficient school funding formula, that statute is currently in compliance with the Kansas Constitution because of the subsequent legislation that increased school funding.  Therefore, K.S.A. § 72-6439 is the current governing law in Kansas.

The Court disagrees that plaintiffs have changed their theory of injury. While the Court agrees with defendants that the Complaint alleges injury by the Framework and Standards' implementation, the Complaint also alleges that plaintiffs have sustained actual, threatened, and redressable injury by a "message of endorsement." Plaintiffs allege they sustained this injury by the "endorsement and promotion of an Orthodoxy that establishes and promotes non-theistic religious beliefs while seeking to suppress competing theistic religious views" because it "causes the [S]tate to promote religious beliefs that are inconsistent with the theistic religious beliefs of plaintiffs, thereby depriving them of the right to be free from government that favors one religious view over another" and " sends a message that they, being theists, are outsiders within the community and that non-theists and materialists are insiders within the community." Pls.' Compl. (Doc. 1) at ¶ 123. At the pleading stage, general factual allegations are sufficient to carry plaintiffs' burden of establishing the elements of standing because the Court must "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *See Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 730 F.3d 1234, 1236 (10th Cir. 2013) (Hartz, J., dissenting) (explaining "[t]he Supreme Court has not imposed special burdens at the pleading stage with respect to jurisdictional issues;" rather, the "sequence of pleading and proving jurisdiction is described in" *Lujan*, 504 U.S. at 561), *cert. granted*, ___ U.S. ___, 134 S. Ct. 1788 (2014); *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). Thus, the Court considers whether plaintiffs' alleged injury, as they pleaded it in their Complaint, establishes an injury sufficient to confer standing.

### i. Do plaintiffs allege an Establishment Clause injury sustained as a result of the Board's adoption of the Framework and Standards?

The Tenth Circuit has observed that though it often is "not difficult" to determine whether a plaintiff has alleged a sufficient injury in fact, "the concept of injury for standing purposes is particularly elusive in Establishment Clause cases." *Awad*, 670 F.3d at 1120 (citations and internal quotation marks omitted).   In the context of Establishment Clause violations, the Tenth Circuit has held that "standing is clearly conferred by non-economic religious values." *Anderson v. Salt Lake City Corp.*, 475 F.2d 29, 31 (10th Cir. 1973), *superseded on other grounds by Van Orden v. Perry*, 545 U.S. 677 (2005); *McCreary Cnty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844 (2005).  The Supreme Court requires, however, that plaintiffs alleging non-economic injury must be "'directly affected by the laws and practices against which their complaints are directed.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.22 (1982) (quoting *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 224 n.9 (1963)).  This requires a plaintiff to allege an injury that is more concrete than the mere assertion that he has observed conduct violating the Constitution. *Id.* at 485 ("the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing" under Article III).

The plaintiffs in *Valley Forge* challenged the federal government's transfer of surplus property in Pennsylvania to a Christian college, claiming that it violated the Establishment Clause.  The plaintiffs learned about the transfer from a news release.  None of the plaintiffs lived in or near Pennsylvania, where the property was located, and none alleged that they would use the property.  The Supreme Court held that plaintiffs could not confer standing on themselves simply by claiming a personal constitutional right to a government that does not

establish religion.  *Id.* at 483.  Instead, the Supreme Court concluded that plaintiffs lacked standing because they "fail[ed] to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees."  *Id.* at 485.  The Supreme Court also noted that it was "not retreat[ing] from [its] earlier holdings that standing may be predicated on noneconomic injury," but the *Valley Forge* plaintiffs simply had not "alleged an *injury* of *any* kind, economic or otherwise, sufficient to confer standing."  *Id.* at 486 (citations omitted).

After *Valley Forge*, the Tenth Circuit has recognized the Supreme Court "has not provided clear and explicit guidance on the difference between psychological consequence from disagreement with government conduct and noneconomic injury that is sufficient to confer standing."  *Awad*, 670 F.3d at 1121.  But in several cases involving challenges to government-sponsored religious symbols, the Tenth Circuit has concluded:  "'[A]llegations of personal contact with a state-sponsored [religious] image suffice to demonstrate . . . direct injury' for standing purposes in Establishment Clause cases."  *Id.* at 1122 (quoting *Am. Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1113 (10th Cir. 2010)); *see also O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1223 (10th Cir. 2005), *cert. denied*, 547 U.S. 1003 (2006); *Foremaster v. City of St. George*, 882 F.2d 1485, 1490–91 (10th Cir. 1989), *cert. denied*, 495 U.S. 910 (1990).  It is not necessary for a plaintiff to allege "a change in behavior" as a consequence of the offensive action.  *Foremaster*, 882 F.2d at 1490.

*Awad* outlined several "key principles" that govern the standing analysis in the Establishment Clause context.  In that case, a Muslim residing in Oklahoma brought an action alleging that a proposed amendment to the Oklahoma Constitution prohibiting courts from

considering or using international or Sharia law violated the Establishment Clause.  670 F.3d at

1117–19.  The Tenth Circuit noted:

> First, in the context of alleged violations of the Establishment Clause, . . .
> standing is clearly conferred by non-economic religious values.  Second, it is not
> enough for litigants to claim a constitutional violation.  They must also identify a
> personal injury suffered by them as a consequence of the alleged constitutional
> error, other than the psychological consequence presumably produced by
> observation of conduct with which one disagrees.  Finally, alleging only personal
> and unwelcome contact with government-sponsored religious symbols is
> sufficient to establish standing.

*Id.* at 1122 (citations and internal quotation marks omitted).  Applying these standards, the Tenth

Circuit held that the plaintiff in *Awad* had standing to assert his Establishment Clause claim

because he suffered from "personal and unwelcome contact" with the proposed constitutional

amendment that expressly condemned his religion and exposed him and other Muslims in

Oklahoma to disfavored treatment.  *Id.* at 1122–23.  This injury, the court held, sufficed as an

injury in fact that conferred standing.  *Id.*

     Unlike the plaintiff in *Awad*, plaintiffs here have not alleged "personal and unwelcome

contact" with the Framework and Standards because the Board has only the power to "supervise"

local public schools and is prohibited from impinging upon a local school district's authority to

determine its own curriculum.  *See* Kan. Const. art. 6, § 2; K.S.A. § 72-6439(b).  While plaintiffs

argue that the Board has "the duty and authority to adopt" the Framework and Standards and "to

supervise local schools in implementing" them under Kansas law (Doc. 40 at 14), the Board's

authority merely to adopt the Framework and Standards does not make them "binding" on local

school districts as plaintiffs contend.  This is especially true when Kansas law specifically

prohibits the Board from "imping[ing]" upon a local school district's authority to determine its

own curriculum.  K.S.A. § 72-6439(b).

Plaintiffs argue that the adoption of the Framework and Standards injures them directly because K.S.A. § 72-1127(a) requires every accredited school in the State of Kansas to "teach the subjects and areas of instruction adopted by the state board of education."  K.S.A. § 72-1127(a).  In making this argument, plaintiffs argue implicitly that the Framework and Standards are "subjects and areas of instruction" adopted by the Board that every accredited school in Kansas must teach, as required by K.S.A. § 72-1127(a).  But defendants correctly put this argument in context by explaining the difference between: (a) "subjects and areas of instruction," that local schools must teach under K.S.A. § 72-1127(a); and (b) "curriculum standards," which the Board must establish under K.S.A. § 72-6439(b) as guidance for local schools in setting curriculum but cannot "impinge" on any local school district's authority to determine its own curriculum.  *See also* K.A.R. 91-31-31(d) (defining "curriculum standards" as "statements, adopted by the state board, of what students should know and be able to do in specific content areas").

The Court agrees that the Framework and Standards are "curriculum standards" and not "subjects and areas of instruction" that accredited schools must teach under K.S.A. § 72-1127(a).  *See* Framework at 2 ("The broad set of expectations for students articulated in the framework is intended to guide the development of new standards that in turn guide revisions to science-related curriculum, instruction, assessment, and professional development for educators."); *see also* Standards at 5 ("The [Standards] are standards, or goals, that reflect what a student should know and be able to do—they do not dictate the manner or methods by which the standards are taught.  The performance expectations are written in a way that expresses the concept and skills to be performed but still leaves curricular and instructional decisions to states, districts, school[s] and teachers.").  As specifically stated in the Kansas statute, the Board has authority to establish

18

curriculum standards but it must not "impinge upon any district's authority to determine its own curriculum." K.S.A. § 72-6439(b). Thus, the Board's adoption of the Framework and Standards does not require local school districts to implement them in their own curriculum.

In addition, Kansas law lists "required subjects" for accredited elementary schools as "reading, writing, arithmetic, geography, spelling, English grammar and composition, history of the United States and of the state of Kansas, civil government and the duties of citizenship, health and hygiene, together with such other subjects as the state board may determine." K.S.A. § 72-1101. The statute lists these "subjects" broadly and explains that the Board is responsible for selecting "subject matter within the several fields of instruction" and for organizing it "into courses of study and instruction" that is merely "for the *guidance* of teachers, principals and superintendents." *Id.* (emphasis added). The Framework and Standards are not broad "subjects" or "areas of instruction" that local schools must teach under the Kansas statute, but instead they include a "subject matter" within a field of instruction that the Board has adopted merely as guidance for local schools.

Consequently, plaintiffs do not allege that the Board requires local school districts to implement the Framework and Standards. Plaintiffs also do not allege that any local school districts actually have implemented the Framework and Standards in the local public schools attended by the plaintiff students. Rather, plaintiffs complain about the potential for future implementation of the Framework and Standards.[11] *See, e.g.*, Pls.' Compl. (Doc. 1) at ¶¶ 1 (the Board's adoption of the Framework and Standards "*will have* the effect of causing Kansas public

---

[11]     Plaintiffs also complain that the Board adopted the Framework and Standards over their objections. Pls.' Compl. (Doc. 1) at ¶¶ 58–63. Plaintiffs' mere objection to the Framework and Standards without any direct, personal injury "suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees" does not suffice to confer standing under Supreme Court precedent. *Valley Forge*, 454 U.S. at 485.

schools to establish and endorse a non-theistic religious worldview") (emphasis added), 24

(alleging that the Framework and Standards impose a strategy that "*will cause* [the State] to

endorse a particular religious viewpoint") (emphasis added), 25 ("implementation of the

[Framework and Standards] *will infringe* on [plaintiffs'] rights under the First and Fourteenth

Amendments") (emphasis added).

These allegations of potential, future injury do not establish an actual or imminent injury

sufficient to confer standing. *See Clapper*, ___ U.S. at ___, 133 S. Ct. at 1147, 1150 (explaining

"imminence" requires an "injury is *certainly* impending" and "allegations of possible future

injury" are not sufficient and thus holding that plaintiffs lacked Article III standing because they

could not demonstrate that a future injury was certainly impending rather than merely

speculative (citations and internal quotation marks omitted)). Consequently, plaintiffs have not

alleged "personal and unwelcome contact" with the Framework and Standards sufficient to

establish an injury in fact to confer standing under the Tenth Circuit's standard for Establishment

Clause claims.

  ii.  **Do plaintiffs allege an Establishment Clause injury based on a "government message" theory?**

Plaintiffs also assert an alternative form of injury. They argue that the adoption of the

Framework and Standards "sends a message that they, being theists, are outsiders within the

community and that non-theists and materialists are insiders within the community." Pls.'

Compl. (Doc. 1) at ¶ 123(b). In asserting this argument, plaintiffs cite several cases addressing

the merits of Establishment Clause claims where plaintiffs challenged unwelcome government-

sponsored religious messages. But in many of those cases, the courts did not address standing.

*See, e.g.*, Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss (Doc. 40) at 11–12 (citing *Edwards v.

Aguillard*, 482 U.S. 578 (1987); *Wallace v. Jaffree*, 472 U.S. 38 (1985); *Cnty. of Allegheny v.*

*Am. Civil Liberties Union*, 492 U.S. 573 (1989); *Epperson v. Arkansas*, 393 U.S. 97 (1968)).

The Supreme Court has cautioned against the use of federal decisions to support standing

arguments when such decisions discuss only the merits of a claim but do not address,

specifically, whether a plaintiff had standing to bring the action: "When a potential jurisdictional

defect is neither noted nor discussed in a federal decision, the decision does not stand for the

proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, ___ U.S. ___, 131

S. Ct. 1436, 1448 (2011). Still, the Tenth Circuit has found "the volume and content of Supreme

Court merits decisions in Establishment Clause religious display and expression cases involving

noneconomic injury . . . instructive." *Awad*, 670 F.3d at 1121 n.6.

The Court has reviewed plaintiffs' cases carefully and also examined other federal court

decisions addressing standing in Establishment Clause-based challenges to government actions

that purportedly endorsed a "message." The Court has not located a Tenth Circuit case deciding

whether a "message" allegedly transmitted by a non-binding governmental policy—by itself—

suffices to confer standing on a plaintiff to assert an Establishment Clause violation. Nor do the

parties cite any controlling case law in the Tenth Circuit discussing whether a "message" of

endorsement theory is sufficient to confer standing on a plaintiff asserting an Establishment

Clause violation.

However, in *Awad*, the Circuit referenced a Ninth Circuit opinion holding that plaintiffs

had standing to challenge a non-binding resolution adopted by the San Francisco Board of

Supervisors. *Awad*, 670 F.3d at 1123 (citing *Catholic League for Religious and Civil Rights v.*

*City and Cnty. of S.F.*, 624 F.3d 1043 (9th Cir. 2010) (en banc), *cert. denied*, ___ U.S. ___, 131

S. Ct. 2875 (2011)). The resolution at issue in *Catholic League* denounced the Catholic

Church's position opposing homosexual adoptions calling it "hateful," "insulting," and

21

"callous." 624 F.3d at 1047.  The Board of Supervisors' resolution also urged the local

archbishop and Catholic Charities to "defy" the Church's instructions to stop placing children in

need of adoption with homosexual households.  *Id.*  Plaintiffs, who were Catholics and a

Catholic advocacy organization, challenged the resolution as a violation of the Establishment

Clause, arguing that it conveyed a "government message" of disapproval and hostility toward

their religious beliefs.  *Id.* at 1048.

In a 6-5 *en banc* decision, the Ninth Circuit's opinion in *Catholic League* held that

plaintiffs had alleged an actual and concrete injury because they came in contact with a non-

binding resolution that "convey[ed] a government message of disapproval and hostility toward

their religious beliefs" that "sen[t] a clear message that they are outsiders, not full members of

the political community . . . thereby chilling their access to the government" and "forcing them

to curtail their political activities to lessen their contact with defendants."  624 F.3d at 1053

(internal quotation marks omitted).  The Ninth Circuit distinguished *Catholic League* from the

Supreme Court's decision in *Valley Forge*, explaining that though "[a] 'psychological

consequence' does not suffice as concrete harm where it is produced merely by 'observation of

conduct with which one disagrees' . . . it does constitute concrete harm where the 'psychological

consequence' is produced by government condemnation of one's own religion or endorsement of

another's in one's own community."  *Id.* at 1052 (quoting *Valley Forge*, 454 U.S. at 485).  The

Ninth Circuit further explained:

> [I]n *Valley Forge*, the psychological consequence was merely disagreement with
> the government, but in the [cases involving government-sponsored religious
> symbols], for which the Court identified a sufficiently concrete injury, the
> psychological consequence was exclusion or denigration on a religious basis
> within the political community.

*Id.* The court found that plaintiffs had alleged they were "directly stigmatized" by the resolution, making them feel "like second-class citizens" of the political community and expressing to the citizenry that they are, because the resolution disparaged their religious beliefs by calling them "'hateful and discriminatory,' 'insulting and callous,' and 'insensitiv[e] and ignoran[t].'" *Id.* at 1052–53.

As noted above, the Tenth Circuit referred to this Ninth Circuit opinion in *Awad*. In that case, the Tenth Circuit explained that *Catholic League* was "consistent with" the standing holding in *Awad*, although the court did not rely on *Catholic League* for its analysis. *Awad*, 670 F.3d at 1123. Instead, the Circuit specifically noted that though the non-binding city resolution in *Catholic League* conveyed "'a government message,'" the proposed constitutional amendment in *Awad* did more: it conveyed "more than a message; it would impose a constitutional command" prohibiting the consideration of Sharia law in state courts. *Awad*, 670 F.3d at 1123 (quoting *Catholic League*, 624 F.3d at 1048). Thus, in *Awad*, the Tenth Circuit did not rely on the Ninth Circuit's reasoning that a "government message" conveyed by a non-binding resolution is sufficient, by itself, to allege an injury to establish standing.

The Court concludes that the Tenth Circuit would not reach the same conclusion on standing as the Ninth Circuit reached in *Catholic League* on the facts alleged by plaintiffs here. Even if the Tenth Circuit were to apply the reasoning of *Catholic League* to the facts presented in this case, the Court predicts that it would conclude plaintiffs' allegations are more like those made in *Valley Forge* than the allegations at issue in *Catholic League*. Unlike the plaintiffs in *Catholic League*, plaintiffs here have not alleged that the Board's adoption of the Framework and Standards denounces, condemns, or disapproves their religion. Rather, plaintiffs complain that the non-binding Framework and Standards endorse a "non-theistic religious worldview" and

exclude the teaching of the "teleological hypothesis." *See* Pls.' Compl. (Doc. 1) at ¶¶ 1, 71–73, 82. As a consequence, plaintiffs argue that this exclusion of teleological teachings in non-binding curriculum standards discriminates against those who "embrace theistic worldviews." *Id.* at ¶ 21. The Court concludes these allegations are more like those made in *Valley Forge*, where the Supreme Court held that plaintiffs had suffered no injury in fact as a consequence of the challenged action (the government's sale of property to a religious college). Instead, the *Valley Forge* plaintiffs merely complained about conduct they disagreed with, and plaintiffs here do the same thing.

In addition, plaintiffs' claim the adoption of the Framework and Standards sends a message that they are "outsiders" within the community. This message, even if true, is not sufficient to confer standing because plaintiffs allege only an "abstract stigmatic injury" rather than a direct and concrete injury. *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 1612 (2011) (citing *Allen v. Wright*, 468 U.S. 737, 755–56 (1984)); *see also Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 606 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 623 (2012) (plaintiffs had no standing to bring an Establishment Clause claim challenging a public school district's policy allowing students to obtain academic credit for off-campus religious instruction offered by private educators because, although plaintiffs alleged that the policy made the student feel like an "outsider," they had "no personal exposure" to the policy "apart from their abstract knowledge" of it); *Awad*, 670 F.3d at 1122 (plaintiffs alleging an Establishment Clause violation must identify a "'personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.'" (quoting *Valley Forge*, 454 U.S. at 485)).

24

Here, plaintiffs' disagreement with the Board's adoption of the Framework and Standards alleges only an abstract stigmatic injury.  As explained above, plaintiffs have not alleged that defendants have authority to implement the Framework and Standards within the curriculum of any local public school or that any local school districts actually have implemented them. Consequently, plaintiffs' alleged injury is just speculative and so they have failed to allege that they have suffered a direct or concrete injury.  Instead, plaintiffs' only alleged injury is their abstract knowledge of the Board's adoption of the Framework and Standards.  Therefore, plaintiffs' allegation that the Framework and Standards sends a message that they are "outsiders" within the community does not establish standing because this allegation, alone, is insufficient to confer standing without an injury in fact.  While plaintiffs may have experienced "deep and genuine offense to a defendant's actions," their disagreement with the Board's actions is not sufficient to confer standing absent a direct and concrete injury.  *Catholic League*, 624 F.3d at 1062 (Graber, J., dissenting).

While this Court has not located any controlling Tenth Circuit precedent on this question, at least two other circuits have come to similar conclusions when presented with a "government message" theory of standing.  In *Freedom From Religion Foundation, Inc. v. Obama*, 641 F.3d 803 (7th Cir. 2011), the Seventh Circuit addressed an Establishment Clause challenge to a federal statute requiring the President to issue a proclamation designating a National Day of Prayer.  *Id.* at 805.  Plaintiffs alleged injury because "they feel excluded, or made unwelcome, when the President asks them to engage in a religious observance that is contrary to their own principles."  *Id.* at 806–07.  The district court determined that plaintiffs had standing to sue because they had been injured by a "message" from the government that it favors Americans who pray and disfavors plaintiffs' views on religion.  *Id.* at 805; *Freedom From Religion Found.,*

*Inc. v. Obama*, 691 F. Supp. 2d 890, 894–95, 902–906 (W.D. Wisc. 2010), *vacated and remanded by* 641 F.3d 803 (7th Cir. 2011).  But the Seventh Circuit reversed, concluding that plaintiffs lacked standing because their only injury was "hurt feelings" which "differ from legal injury" and "'value interests of concerned bystanders' do not support standing to sue."  641 F.3d at 807 (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).  As the Seventh Circuit summarized, the only injury to plaintiffs was "disagreement with the President's action" and "a feeling of alienation cannot suffice as injury in fact."  *Id.* at 808.

In *In re Navy Chaplaincy*, 534 F.3d 756 (D.D.C. 2008), *cert. denied*, 556 U.S. 1167 (2009), the District of Columbia Circuit considered a challenge brought by a group of Protestant Navy chaplains alleging that the Navy discriminates in favor of Catholic chaplains in certain aspects of its retirement system.  *Id.* at 759.  Plaintiffs asserted several standing arguments including that they had been "subjected to the Navy's 'message' of religious preference as a result of the Navy's running a retirement system that favors Catholic chaplains."  *Id.* at 760.  The court rejected plaintiffs' standing argument, concluding it impermissibly expanded standing limitations and would have allowed "every government *action* that allegedly violates the Establishment Clause [to] be re-characterized as a governmental *message* promoting religion." *Id.* at 764.  The court of appeals distinguished *Navy Chaplaincy* from religious symbol cases where the government actively and directly had communicated a religious message that plaintiffs observed, read, or heard.  *Id.*  In contrast, the Navy had not communicated a religious message through words or symbols.  *Id.*  Rather, the plaintiffs only had alleged disagreement with the government's conduct which, under *Valley Forge*, does not confer standing to sue.  *Id.*  Thus, the court concluded:  "When plaintiffs are not themselves affected by a government action except through their abstract offense at the *message* allegedly conveyed by that action, they have not

shown injury-in-fact to bring an Establishment Clause claim, at least outside the distinct context of the religious display and prayer cases." *Id.* at 764–65.

The Court concludes that our Circuit, when confronted with plaintiffs' standing argument in this case, would follow the reasoning used by the Seventh and District of Columbia Circuits and hold that plaintiffs lack standing to sue where the only injury alleged is based on a "message" of government endorsement of religion. As those circuits explained, allegations of injury based on a "message" did not confer standing absent a concrete injury. Likewise, in this case, plaintiffs have not established a concrete injury because they do not allege that local schools districts have implemented the Framework and Standards but rather describe implementation as only a potential or future event. Plaintiffs' only alleged injury is disagreement with the Board's adoption of the Framework and Standards. But mere disagreement with government action is not an injury sufficient to confer standing under Article III. *Valley Forge*, 454 U.S. at 485 (no standing derived from "the psychological consequence presumably produced by observation of conduct with which one disagrees."). Thus, without a personal and concrete injury plaintiffs lack standing to sue based on only an alleged injury arising from a "message of endorsement" and therefore, the Court holds plaintiffs have failed to show they have standing to assert their Establishment Clause claim.

### b.  Free Speech, Free Exercise, and Equal Protection Injury

Although plaintiffs' briefing does not distinguish between their Establishment Clause injury and their Free Speech, Free Exercise, and Equal Protection injury, the Court nevertheless considers whether plaintiffs have alleged an injury sufficient to establish standing for plaintiffs' other three claims. As explained below, the Court concludes that plaintiffs have failed to identify an injury sufficient to confer standing to assert any of their three remaining theories.

27

A plaintiff must allege an injury to establish standing to assert each of its claims.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  First, to establish an injury sufficient to confer standing for a free speech claim, plaintiffs must demonstrate that the challenged government action has or will have a "chilling effect" on the exercise of their free speech rights and that this "chilling effect" arises from an objectively justified fear of real consequences.  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010); *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003).  Although plaintiffs do not specifically allege that the Board's adoption of the Framework and Standards has had or will have a "chilling effect" on their free speech rights, plaintiffs do allege that it "discourages [the students from asking] questions that imply any criticism of the Orthodoxy" and "interferes with [the parents'] right to direct the religious education of their children."  Pls.' Compl. (Doc. 1) at ¶¶ 124(e), 125(a).  Thus, only the plaintiff students and parents have alleged any free speech injury.  For the reasons explained below, however, the Court concludes even these allegations fail to establish an actual or imminent injury sufficient to confer standing to assert a free speech claim.

 Second, to establish an injury sufficient to assert a free exercise claim, plaintiffs "must show that the challenged government action infringes on their 'particular religious freedoms.'"  *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1186 (10th Cir. 2013) (Matheson, J., concurring in part and dissenting in part), *aff'd*, ___ U.S. ___, 134 S. Ct. 2751 (2014) (quoting *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 224 n.9 (1963)).  Plaintiffs allege the Board's adoption of the Framework and Standards "interferes with the free exercise of [the students'] religion by imbuing them with a religious belief that is inconsistent with their existing religious beliefs" and "interferes with [the parents'] right to freely exercise their theistic religion by causing their children to embrace a materialistic/atheistic Worldview that is inconsistent with

28

that religion."   Pls.' Compl. (Doc. 1) at ¶¶ 124(d), 125 (c).  Once again, only the plaintiff students and parents have alleged a free exercise injury in their Complaint but again, as shown below, these allegations do not suffice to demonstrate an actual or imminent injury.

Finally, to establish an injury sufficient to allege standing for an equal protection claim, a plaintiff must show that the challenged government action denies plaintiff equal treatment.  *Am. Civil Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) (citing *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)). All plaintiffs allege that they have been injured by the Board's adoption of the Framework and Standards because this adoption "denies them the right to be treated equally with non-theists." Pls.' Compl. (Doc. 1) at ¶ 123(c).

Although plaintiffs have alleged interference with their free speech and free exercise rights and a denial of equal treatment, these alleged injuries are not actual or imminent injuries sufficient to establish standing because plaintiffs have not alleged either that:  (a) the Board has mandated implementation of the Framework and Standards in local school districts; or (b) any local school district actually has implemented the Framework and Standards.  Thus, plaintiffs have suffered no injury.  Plaintiffs claim only the threat of potential and future injury when the Framework and Standards are implemented by local school districts.  *See, e.g.*, Pls.' Compl. (Doc. 1) at ¶ 25 ("implementation of the [Framework and Standards] *will infringe* on [plaintiffs'] rights under the First and Fourteenth Amendments") (emphasis added).  But, as already discussed, the Board only can "supervise" local school districts under Kansas law and it is prohibited from controlling any local school district's curriculum.  Thus, plaintiffs' allegations that local school districts will implement the Framework and Standards consist purely of their conjecture and it does not establish an actual or imminent injury sufficient to confer standing.

*See Clapper v. Amnesty Int'l USA*, ___ U.S. ___, 133 S. Ct. 1138, 1147 (2013) (explaining that an alleged injury must be "certainly impending" and not "too speculative for Article III purposes"). Therefore, while plaintiffs may disagree with the Board's decision to adopt the Framework and Standards, they have not alleged an actual or imminent injury that could establish standing to sue for their Free Speech, Free Exercise, and Equal Protection claims. Consequently, plaintiffs lack standing to assert these three claims.

### 2.   Causation and Redressability

The Court also concludes that plaintiffs lack standing to assert any of their four claims[12] because they cannot establish the second and third requirements for standing under *Lujan*— causation and redressability. *Lujan*, 504 U.S. at 560–61. Plaintiffs allege the Board's adoption of the Framework and Standards has injured them. As described above, however, the Board only has supervisory authority over local school districts and cannot impinge on local school districts or require them to implement the Framework and Standards as part of their curriculum. Where, as here, plaintiffs' asserted injury arises from the government's regulation of someone else, "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Lujan*, 504 U.S. at 562. Consequently, "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). Thus, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will

---

[12]     This includes plaintiffs' Establishment Clause, Free Speech, Free Exercise, and Equal Protection claims.

be made in such manner as to produce causation and permit redressability of injury." *Id.* (citation omitted).

Recently, the Supreme Court affirmed its "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, ___ U.S. ___, 133 S. Ct. 1138, 1150 (2013).  In *Clapper*, plaintiffs challenged a federal statute authorizing government surveillance of individuals who are not "United States persons" and are reasonably believed to be located outside the United States.  But before it could commence surveillance, the government was required to obtain approval from the Foreign Intelligence Surveillance Court.  *Id.* at 1142.  The Supreme Court found that plaintiffs only could speculate whether the court would authorize such surveillance and, therefore, plaintiffs could not establish that the requisite injury was certainly impending or fairly traceable to the federal statute.  *Id.* at 1150.

Likewise, in this case, plaintiffs only can speculate whether local school districts will implement the Framework and Standards in their schools' curriculum.  Plaintiffs allege only that the Framework and Standards will cause injury when implemented by local school districts, but plaintiffs have not alleged when or how or even if that will occur.

In addition, plaintiffs do not allege that the Board's adoption of the Framework and Standards mandates or requires local school districts to implement them.  Nor could they make such a claim, for Kansas law only allows the Board to supervise and it prohibits the Board from impinging on a local school district's authority to determine its own curriculum.  Thus, the Board's adoption of the Framework and Standards is a permissive action providing guidance to local school districts, but it does not mandate any action by local schools.  The Northern District of Oklahoma recently determined that plaintiffs lacked standing to challenge a permissive federal

law that, like the Board's adoption of the Framework and Standards here, did not mandate any action by states or remove any discretion from states.  *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252, 1266 (N.D. Okla. 2014), *aff'd on other grounds*, 760 F.3d 1070 (10th Cir. 2014).

In *Bishop*, plaintiffs, a lesbian couple, lacked standing to challenge section 2 of the Defense of Marriage Act (DOMA) which provides that no state "shall be required to give effect to" a marriage license of any other state if the marriage was between persons of the same sex because it was an entirely permissive federal law that "does not mandate that states take any particular action, does not remove any discretion from states, does not confer benefits upon non-recognizing states, and does not punish recognizing states."  *Id.* at 1266.  Thus, because the federal law did not "remove any local, independent discretion" to enforce the law, the Oklahoma district court held that the statute was not a fairly traceable cause of the same sex couple's injuries which included not having their California marriage recognized in Oklahoma, the denial of equal treatment of their marriage, and stigma and humiliation.  *Id.* at 1266, 1267, 1268.

Similarly, here, plaintiffs challenge the Board's adoption of the Framework and Standards which they allege local school districts will implement in the future.  But the Framework and Standards do not require local school districts to implement them.  Rather, local school districts retain their local and independent authority to determine their own curriculum under K.S.A. § 72-6439(b).  *See also State ex rel. Miller v. Bd. of Educ. of Unified Sch. Dist. No. 398*, 511 P.2d 705, 713 (Kan. 1973) (explaining that the Board's "supervision" of local school districts "means something more than to advise but something less than to control").  Thus, like the plaintiffs in *Bishop*, plaintiffs here lack standing to challenge the adoption of a permissive set of standards which do not eradicate any of the independent discretion Kansas school districts

possess to control their curriculum.  Consequently, plaintiffs have alleged no injury fairly

traceable to the Board's adoption of the non-binding Framework and Standards.  In addition, the

Court cannot redress plaintiffs' claims because, even if the Court grants plaintiffs' requested

relief and prohibits the Board from implementing the Framework and Standards, the Board lacks

authority under Kansas law to control the curriculum of local school districts.  Thus, a favorable

decision from the Court would not redress the harm theorized by plaintiffs' claims.

The Supreme Court requires plaintiffs to allege facts "showing [that unfettered choices

made by independent actors not before the courts] have been or will be made in such manner as

to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.  Plaintiffs here

have not done so.  Thus, plaintiffs have not alleged an injury that is fairly traceable to the

Board's decision to adopt the Framework and Standards or redressable by a favorable decision

from this Court.  *Id.* at 560–61.  Plaintiffs thus lack standing to bring the suit they have filed.

### 3.  Taxpayer Standing

Finally, plaintiffs David and Victoria Prather allege standing based on their status as

Kansas taxpayers "who pay state and local income and property taxes which are used in part to

fund public schools in Kansas."  Pls.' Compl. (Doc. 1) at ¶ 43.  Defendants argue[13] the Prathers

---

[13]     Defendants argue that the Prathers assert only Establishment Clause claims.  *See* Pls.' Compl. (Doc. 1) at ¶ 43 ("Plaintiffs [the Prathers] . . . who pay state and local income and property taxes which are used in part to fund public schools in Kansas, and who object to the use of such funds by the State of Kansas for the establishment and promotion of a non-theistic religious worldview through its implementation of the F&S.")  Plaintiffs never contest this assertion.  Nevertheless, the Court concludes that the Prathers do not have standing to assert any of the claims in this lawsuit.

The Tenth Circuit has determined that "where an Establishment Clause violation is not asserted, a state taxpayer must allege that appropriated funds were spent for an allegedly unlawful purpose and that the illegal appropriations and expenditures are tied to a direct and palpable injury threatened or suffered." *Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1401 (10th Cir. 1992), *cert. denied*, 507 U.S. 949 (1993).  As described above, plaintiffs have alleged no direct and palpable injury threatened or suffered sufficient to establish taxpayer standing.  Rather, plaintiffs' alleged injury (the use of income and property taxes to fund the implementation of the Framework and Standards) is speculative and fails to allege a sufficient injury to confer standing.

cannot establish standing based merely on their status as taxpayers and that their allegations do not satisfy the narrow exception to the general rule prohibiting taxpayer standing for certain Establishment Clause claims.  The Court agrees.  The Prathers' taxpayer status does not confer standing on them to assert the claims alleged here.

The Supreme Court refuses to recognize standing based on a plaintiff's status merely as a taxpayer, absent special circumstances.  *Ariz. Christian Sch. Tuition Org. v. Winn*, ___ U.S. ___, 131 S. Ct. 1436, 1442 (2011).  The Supreme Court "has rejected the general proposition that an individual who has paid taxes has a 'continuing, legally cognizable interest in ensuring that those funds are not used by the Government in a way that violates the Constitution.'"  *Id.* at 1442–43 (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007)).  This is known as the "rule against taxpayer standing."  *Id.* at 1443; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006) (holding the rule against taxpayer standing applies both to federal taxpayers and state taxpayers "challeng[ing] state tax or spending decisions simply by virtue of their status as [state] taxpayers").

There is, however, a "narrow exception" to the general prohibition against taxpayer standing.  *Bowen v. Kendrick*, 487 U.S. 589, 618 (1998) (citing *Flast v. Cohen*, 392 U.S. 83 (1968)).  In *Flast v. Cohen*, the Supreme Court held that a plaintiff may establish standing under the narrow taxpayer exception by alleging:  (1) a "logical link" between the plaintiff's taxpayer status "and the type of legislative enactment attacked" as well as (2) "a nexus" between the plaintiff's taxpayer status and "the precise nature of the constitutional infringement alleged."  *Flast*, 392 U.S. at 102.  A plaintiff must satisfy both prongs of this test to demonstrate that he has "a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party

to invoke a federal court's jurisdiction." *Id.* at 103.  Here, plaintiffs have failed to allege facts establishing either prong of the *Flast* test.

First, plaintiffs have not alleged a "logical link" between their taxpayer status and the Board's adoption of the Framework and Standards.  *Id.* at 102.  The Board's action was not a "legislative enactment" within the state government's power to tax and spend.  Rather, as previously described, the Board's adoption of the Framework and Standards was part of its "supervisory" function over local public schools.  Plaintiffs do not allege that the Board's action mandates or requires local school districts to implement the Framework and Standards, and, under Kansas law, local school districts retain control to determine their own curriculum. Therefore, plaintiffs' claims that "significant funding will be necessary for implementation" of the Framework and Standards (Doc. 40 at 28) is speculative at best and does not establish a "logical link" between plaintiffs' taxpayer status and the challenged government action.

The Supreme Court rejected a similar attempt to assert standing in the *Valley Forge* case. This case challenged a Cabinet Secretary's decision to transfer government property to a Christian college.  The Supreme Court held that plaintiffs did not meet the first requirement of *Flast* of establishing a "logical link" between the plaintiffs' taxpayer status and the challenged legislative enactment because "the source of [plaintiffs'] complaint is not a congressional action, but a decision by [the Secretary] to transfer a parcel of federal property."  454 U.S. at 479. Likewise, here, the source of plaintiffs' complaint is the Board's adoption of the Framework and Standards.  The Board's adoption was not legislative action but, instead, part of its function supervising and providing guidance to local school districts in a non-binding and non-controlling capacity.

Second, plaintiffs have alleged no "nexus" between their taxpayer status and "the precise nature of the constitutional infringement alleged." *Flast*, 392 U.S. at 102.  Again, plaintiffs' allegation that the Board's adoption of the Framework and Standards will require significant funding from Kansas taxpayers is speculative when plaintiffs do not allege that any local school district has implemented the Framework and Standards or that they will do so in the future. Thus, plaintiffs' complaints about taxpayer funding are too "minute and indeterminable . . . remote, fluctuating and uncertain" to provide a basis for standing.  *Frothingham v. Mellon*, 262 U.S. 447, 487 (1923).  Therefore, the Prathers, as taxpayers, have failed to allege the requisite standing interest necessary to maintain this action.

The Supreme Court has explained that *Flast* "reaffirmed that the 'case or controversy' aspect of standing is unsatisfied 'where a taxpayer seeks to employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in [government].'"  *Valley Forge*, 454 U.S. at 479 (quoting *Flast*, 392 U.S. at 106).  Here, the Prathers disagree with the Board's decision to adopt the Framework and Standards.   But they cannot bring a lawsuit based on these grievances merely because they are Kansas taxpayers. Thus, the Court determines that the Prathers, as Kansas taxpayers, lack standing to sue.

## V.    Conclusion

Defendants seek dismissal of plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Because the Court determines that it lacks subject matter jurisdiction, it does not reach defendants' arguments seeking dismissal for failure to state a claim.  *See Staggs v. U.S. ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884 n.2 (10th Cir. 2005) (declining to reach the merits of claim as an alternative basis for affirmance where the court affirmed the district court's decision that it

lacked subject matter jurisdiction over claim (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998) (rejecting the doctrine of hypothetical jurisdiction))).

The Court grants defendants' motion to dismiss the Kansas State Board of Education and the Kansas State Department of Education based on Eleventh Amendment sovereign immunity. The Court also grants defendants' motion to dismiss because plaintiffs lack standing to prosecute this action. In sum, the Court dismisses this case in its entirety without prejudice.[14]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 29) is granted.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion for Leave to File Surreply (Doc. 42) is denied.

**IT IS SO ORDERED.**

**Dated this 2nd day of December, 2014, at Topeka, Kansas.**

        **s/ Daniel D. Crabtree**
        **Daniel D. Crabtree**
        **United States District Judge**

---

[14]    When dismissing a case based on sovereign immunity or the absence of standing, the Court must dismiss the case without prejudice. *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011*)* ("[A] dismissal on sovereign immunity grounds or for lack of standing must be without prejudice." (citations omitted)).